IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | |
| DANIEL H. GLICK and FINANCIAL MANAGEMENT STRATEGIES INC., | ) ) ) | No. 17 C 2251 |
| | ) | Hon. Virginia M. Kendall |
| *Defendants* | ) ) | |
| and | ) ) | |
| GLICK ACCOUNTING SERVICES INC., EDWARD H. FORTE, and DAVID B. SLAGTER, | ) ) ) ) | |
| *Relief Defendants.* | ) ) | |

## MEMORANDUM OPINION AND ORDER

In March 2017, the SEC filed this action alleging Daniel Glick and his company Financial Management Strategies, Inc. (FMS) defrauded elderly investors of millions of dollars in violation of federal securities laws. (Dkt. 1). The Complaint names as relief defendants Glick Accounting Services Inc, David B. Slagter and Edward H. Forte. (*Id.*). The Court entered an Order of Default against Relief Defendant Forte on July 13, 2017. (Dkt. 53). The SEC subsequently moved for a default judgment against Forte. (Dkt. 68). For the following reasons, the Court grants the SEC's Motion for a Default Judgment (Dkt. 68).

## BACKGROUND

The SEC filed this action in March 2017. The Complaint alleges that between 2011 and 2016, Glick and his company FMS raised over $6 million from elderly investors, promising to manage and invest the investors' money in exchange for compensation but instead using the funds

1

for their own benefit and for the benefit of the relief defendants. (Dkt. 1). It alleges further that between 2014 and 2016, Forte and his affiliates received over $1 million from Glick and his entities and that the funds received are traceable to funds Glick obtained from investors through his fraudulent scheme. (*Id.* at ¶¶ 18, 82).

After filing the Complaint, the SEC repeatedly asked Alderman Howard Brookins, the attorney who was representing Forte in the related investigation, if he would waive service on Forte's behalf. On March 24, 2017, the day after the Complaint was filed, the SEC emailed Brookins twice notifying him that the Complaint had been filed and that it named Forte as a relief defendant and sought disgorgement from him, providing a copy of the Complaint, and asking if Brookins would waive service. (Dkts. 60-7, 60-8). Brookins ignored the emails. Meanwhile, all other defendants and relief defendants waived service of the Complaint. (Dkts. 12–15). The SEC contacted Brookins three more times between March 24 and April 7 requesting waiver of service and notifying Brookins of hearings scheduled before the Court. (*See, e.g.*, Dkts. 60-11). Brookins responded twice, once my email and another time by voice mail, stating that he was in communications with Forte but never accepting or agreeing to waive service. (*See, e.g.*, Dkts. 60-11, 60-13, 60-14, 60-15).

Eventually, the SEC resorted to traditional means of service. In April and May of 2017, the U.S. Marshals tried but failed to serve Forte at least four times including one time when Forte reportedly drove up to his house, opened the parking gate and upon seeing the Marshal waiting for him, drove away. (Dkt. 24). The Marshals returned the summons unexecuted and the SEC hired a private process server. (*Id.*; Dkt. 40 at ¶¶ 3–4). Forte was finally formally served outside of his home on June 3, 2017—more than two months after Brookins received notice of the Complaint and the first request for waiver of service. (Dkt. 35).

2

Once served, Forte had until June 26, 2017 to answer to the Complaint. (*Id.*). This deadline came and went without any response from Forte. Forte never moved for an extension of the deadline or otherwise indicated to the Court that he needed more time to answer. On June 27, 2017, the SEC moved for an entry of default against Forte under Federal Rule of Civil Procedure 55(a) for failure to respond to the Complaint. (Dkt. 40).

The Court held a hearing on the SEC's Motion on July 13, 2017. (Dkt. 53). At the hearing, the SEC explained to the Court that it sent a copy of the Complaint to Forte's counsel on March 24, that Forte was formally served in June after Brookins repeatedly ignored requests to consent to waiver of service, and that Forte had failed to take any action since being served. (*See* Dkt. 60). The SEC also reported also that although Brookins had represented Forte in the related investigation and had been in communications with the SEC regarding this matter, Forte informed them for the first time that day that he may seek different counsel to represent him in the present case. (*Id.*). The Court then questioned Forte directly and ultimately agreed with the SEC's position that default was appropriate:

> MR. SEEGER: Relief defendant Forte's counsel received a copy of the complaint on March 24th. That's the day after it was filed. We asked repeatedly if he could consent to service. He did not. We served him the old-fashioned way in June. His answer was due on June 26th or 27th. No action has been taken since then.
>
> THE COURT: And you gave him this motion, right?
>
> MR. SEEGER: We did, your Honor, absolutely.
>
> THE COURT: So Mr. Forte is here by himself. What happened to his lawyer?
>
> MR. SEEGER: Alderman Brookins has not formally appeared in the matter, your Honor. He did represent Mr. Forte during the investigation.
>
> THE COURT: Oh, I see.
>
> MR. SEEGER: We have asked him repeatedly by email and -- if he was going to be representing him in this matter. We have not received a straight answer. I understand from Mr. Forte, just in the hallway this morning I learned for the first

time that he is searching for a lawyer and apparently he may or may not have Mr. Brookins represent him in this matter. Our view, your Honor, is that this is just another delay tactic. His attorney has known about this matter since March 24th.

THE COURT: And you also notified him of this, because he received this motion as well.

MR. SEEGER: Correct, your Honor. We gave him notice of the original hearing date, which is July 26th, last week as a courtesy. Even though he's not entered an appearance, I forwarded notice of today's hearing to Mr. Brookins. And I asked him to forward it to Mr. Forte as well. I also mailed him a copy, so that he's got double-barreled notice.

THE COURT: Yeah, I think there's plenty of belts and suspenders here. So, Mr. Forte, the time has long run since you yourself or an attorney were to answer this complaint. And it has not been answered. And there's been adequate notice to both of you. And, therefore, I am entering the default against you on the record. And if he files the motion -- or files an appearance, he can come in and try to change that. But today it is defaulted. All right. Now the next one is --

Mr. MR. FORTE: What does that exactly mean, your Honor?

THE COURT: It means that you just had a judgment entered against you because you didn't respond to the complaint. It's bad.

MR. FORTE: Okay.

THE COURT: You've got an attorney. He was notified. You've been notified repeatedly and decided to ignore it. So we have rules in the court. And you just had a default judgment entered against you. . . . There's nothing I can do except apply the rules to you, and there's no basis right now for me not to apply the rules to you.

MR. FORTE: Okay.

(*Id.* at 4:8–7:5). The Court entered an Order of Default against Forte that same day. (Dkt. 53).

Following the entry of default, Forte retained a different attorney and filed a flurry of motions attempting to delay further any default judgment to be entered against him, including a Motion to Vacate Default (Dkt. 55), Motion for Leave to File Responsive Pleading to Complaint (Dkt. 56), and Motion to Dissolve or Modify Order of Preliminary Injunction (Dkt. 63), all of which the parties fully briefed. The SEC in turn filed the present Motion for a Default Judgment. (Dkt. 68). Forte then filed yet another motion seeking to set a settlement conference. (Dkt. 73).

The Court held a hearing on all pending motions on August 14, 2017. After hearing argument from the parties' attorneys, the Court denied Forte's motions to vacate, for leave to file a responsive pleading, to dissolve or modify the preliminary injunction order and to set a settlement conference. (Dkts 79, 88). With regard to the motion to vacate, Forte's counsel argued that Forte failed to respond to the Complaint because he was not aware of the complaint or the deadline to respond. The Court rejected this argument:

> THE COURT: . . . So the problem with your motion for relief . . . [from] the default is that your client was aware of the pending complaint and was aware of all of my deadlines but still didn't do anything about it. And you have to have some kind of excused neglect other than simply: I don't want to deal with this. So can you articulate to me why you think that I should vacate that default judgment?
>
> MR. ONYANGO: Sure, Your Honor. So my understanding is that after he was served, he has not received anything in the mail before he filed an appearance. And under Rule 5, the SEC is required to send all communications and notices to him before he had an attorney on file. And I understand that Mr. Brookins represented him in the administrative proceedings, but then Mr. Brookins told him that he wouldn't be able to represent him because he has some issues with bar membership registrations before this Court. So as soon as he found that out, which was, I believe, the day before July 13th when the notice was motioned up, he appeared here personally to express his intent to defend it. . . .
>
> THE COURT: I think the problem I have with that analysis is that Mr. Brookins was representing him in the related matter, was aware of this complaint, and at some point determined that he wasn't the best person to represent him, but the whole time his client is aware that he has to do something about that then. And where do you get that he never got notice if he is getting notice through Mr. Brookins? Mr. Brookins is aware, right?
>
> MR. ONYANGO: I spoke with him, Mr. Forte, yesterday. Mr. Brookins actually called him and told him to come to court on July the 13th. He has not received any notices in the mail from the SEC at all . . . after he was served.
>
> THE COURT: Okay. And your position on the -- on what the failure was to respond?
>
> MR. SEEGER: Yes, Your Honor. The SEC gave notice to Forte's counsel over and over and over again –
>
> THE COURT: This is Mr. Brookins?

5

MR. SEEGER: Correct, Mr. Brookins. . . Who, by the way, represented Mr. Forte beginning in January. So it wasn't some out-of-blue lawyer. . . . It was someone who had a history of months of representing Mr. Forte. And under the ethical rules, Your Honor, we have to give notice through an attorney. That's why we gave notice to Mr. -- Mr. Brookins. We gave him notice on March 24th, March 28th, April 7th. Over and over and over again, we invited him to a preliminary injunction hearing. We had email communications with him. There was replete notice with him.

. . .

MR. ONYANGO: Our position, Your Honor, is under Rule 5, as long as there's no appearance on file for the client, the defendant has to directly serve all papers that are filed in court with the defendant personally even if they have another attorney that might represent them in another matter other than the case that's pending in court.

THE COURT: Okay. First of all, I don't know if you could say another matter. It's not like we're looking at a car accident versus this SEC matter. And secondly, weren't you in communications with Mr. Brookins? . . .

MR. SEEGER: Absolutely. Your Honor, for example, we came in in late March on the complaint. . . . I had a call with Brookins where we talked about the hearing. I sent him a couple -- several emails, "Hey, are you coming to the preliminary injunction hearing?" So there's been dialogue. You know, until he ends his representation of Forte, we've got to go through him, because up to that point in time, he was the representative of Forte.

. . .

THE COURT: So how do you have it that he's not represented on this matter?

MR. ONYANGO: Because he's not authorized to represent him on this matter in this court, because he doesn't have the bar membership to be here.

THE COURT: Well, that occurred later on in his representation when he informed your client -- is that who you're representing now -- that he didn't have the proper notifications or memberships. But then it was incumbent upon your client to act immediately to get someone who did, and he didn't do that.

. . .

MR. ONYANGO: He didn't find out, Your Honor, until July 12th, which was the day before the hearing before this Court. They filed their motion –

THE COURT: So his prior attorney knew that he was not a member of the federal trial bar and couldn't represent him here in court? Is that what the issue was, federal trial bar?

6

> MR. SEEGER: I believe so, Your Honor.
>
> THE COURT: And notifies him, according to you, in July. So then you've got a case of attorney malpractice potentially, but not a good cause for not having representation here in court when he could have come in. He also -- I gave him an opportunity to get someone, and he didn't do it. It's been nearly nine months, and he has not come forward or answered this complaint. The motion to vacate is denied.

(Dkt. 88 at 4:5–11:9). At the conclusion of the hearing, the Court observed generally that Forte was clearing attempting to avoid the claim against him at every turn:

> THE COURT: . . . All right. So you can see what you can do to help him, but this is someone who has been the proverbial ostrich putting his head in the sand, trying not to look at the reality of the situation. And reality has hit.

(*Id.* at 14:17–20).

The Court set a briefing schedule on the Motion for a Default Judgment against Forte (Dkt. 79) but then stayed that briefing pending Forte's interlocutory appeal of the Court's rulings at the August 14 hearing. (Dkt. 87). After more than eight months, the Court lifted the stay and briefing resumed. At long last, the fully briefed motion for a default judgment against Forte is now before the Court.

## DISCUSSION

The SEC's Motion for a Default Judgment against Forte seeks an award of disgorgement and prejudgment interest of 1,044,270. (Dkt. 68). In response, Forte not only argues the Court should not enter default judgment against him but also requests that the Court again reconsider its entry of default and that the Court stay this action pending a separate private action pending before another district court and/or judgment as to liability is entered against the other defendants and relief defendants in this case. (Dkt. 115). The Court addresses each motion in turn below.

I.    **Motion for Reconsideration**

In his Response to the SEC's Motion Forte again requests that the Court reconsider its entry of default against him and vacate its prior ruling pursuant to Federal Rule of Civil Procedure 54(b) and to allow him to respond to the Complaint. (Dkt. 115 at 1). Federal Rule of Civil Procedure 54(b) authorizes the Court to reconsider and revise its nonfinal orders at any time before final judgment is entered. Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). Forte argues the Court should vacate its entry of default because he did not have actual notice of this lawsuit until June 3, 2017 and was not represented in this litigation until after the July 13 hearing. (Dkt. 117 at 1–2).

The Court held a hearing on the motion for entry of default on July 13, 2017. At no point during this hearing did Forte notify the Court that he had only recently learned of this lawsuit on June 3, 2017. At the hearing, the SEC detailed for the Court the efforts it had taken to notify both Forte and his attorney for the related SEC investigation, Alderman Brookins, about this lawsuit. Not once did Forte dispute the SEC's representations to the Court, including that Brookins had been representing him in the related investigation or that Brookins had received a copy of the Complaint and had been in communication with the SEC regarding the present lawsuit. Rather, when asked why his attorney was not present for the hearing, Forte told the Court that Brookins was absent only because he had not yet succeeded in filing the requisite paperwork for filing an appearance on Forte's behalf:

> THE COURT: Okay. What's going on, Mr. Forte?
>
> MR. FORTE: Mr. Brookins doesn't have some registration form to appear in federal court, of which he's taking care of that. Talked to him this morning, and he said he would be filing an appearance.

(Dkt. 69 at 5:7–11).

8

Now, Forte argues that Brookins never represented him in the present litigation and that it was "unreasonable" for the SEC to assume he would do so. (Dkt. 115 at 2–3). But the question was not whether Brookins filed an appearance in this case; it was whether Brookins and, therefore, Forte had received notice of this case. The Court found that he did, both at the July 13 hearing and when denying Forte's first motion to vacate the default, and there was ample support for doing so including Forte's own representations to the Court that he hired Brookins to represent him in *all* matters related to the Glick investigation. (*See, e.g.* Dkt. 65 at 3 ("As the SEC correctly points out, Forte retained Mr. Brookings to represent him generally in these matters. He had every reason to believe that Mr. Brookings would actively represent his interests in these matters.").

Additionally, the fact that Forte was formally served on June 3, 2017 changes nothing. This is not new information. The Court knew this at the July 13 hearing. (*See* Dkt. 61 at 4:11-12). Forte's Answer to the Complaint was due 21 days later. *See* Fed. R. Civ. P. 12(1)(A)(i). That deadline passed without any action from Forte and without any communication to the SEC or the Court that he needed additional time to respond. As the Court explained, there was and still is no basis to not apply the rules to Forte. (*See e.g.*, Dkt. 61 at 7:2-4).

The Court already entertained one motion for reconsideration of its entry of default and it reached the same conclusion. Forte's present motion essentially rehashes the same arguments for now a third time. The Court sees no reason to alter its prior rulings. *See, e.g., Brodsky v. HumanaDental Ins. Co.*, No. 1:10-CV-03233, 2016 WL 9212001, at *1 (N.D. Ill. Oct. 17, 2016) ("A motion to reconsider an interlocutory order . . . serves a limited purpose, and it is not a vehicle to merely rehash an argument the court has already rejected or to present legal arguments that were not presented earlier."). Therefore, the Court denies Forte's request to vacate the entry of default.

## II. Motion to Stay

In his Response, Forte also requests that this action be stayed as to him until a separate pending case brought by the victims of the fraud against Glick and Forte, *see Bobin et al. v. Glick et al.*, No. 17 C 9060 (N.D. Ill.) (the "Victims' Case"), is resolved and/or until judgment as to liability is entered against the other defendants in this case. (Dkt. 117 at 4). Neither reason merits a stay.

Forte offers no precedent requiring the Court to stay the present SEC enforcement action pending resolution of the independent private litigation and the Court knows of none. Rather, the Court has "broad discretion" in deciding whether to stay proceedings as an incident to its power to control its own docket consistent with equity, judicial economy and the parties' interests. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Radio Corp. of America v. Igoe*, 217 F.2d 218, 220 (7th Cir.1955) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). A stay is generally appropriate where "the resolution of litigation in another court between the same and/or related parties involves controlling issues in the case before the Court." *See, e.g., Joao Bock Transaction Sys., LLC v. First Nat. Bank*, No. 11 C 6472, 2013 WL 4840240, at *2 (N.D. Ill. Sept. 10, 2013). But that is not the case here. The only issue pending before this Court as it relates to Forte is the amount of judgment to enter against him; as discussed below, whether Forte committed a securities violation as alleged in the separate private litigation will have no effect on this determination.

The power to issue a stay pending resolution of independent proceedings is not limited to situations where the parties and controlling issues are identical. *Radio Corp.*, 217 F.2d at 220.

However, in any scenario, the party moving for the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Id.* ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.") (citing *Landis*, 299 U.S. at 254). Therefore, in determining whether a stay is appropriate, the Court considers: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (ii) whether a stay will simplify the issues in question and streamline the trial; and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Joao Bock Transaction Sys.*, 2013 WL 4840240, at *2 (quoting *Pfiizer v. Apotex, Inc.*, 640 F.Supp.2d 1006, 1007 (N.D.Ill.2009)); *see also, e.g., Ford for Estate of Srmack-Brinkman v. Hall*, No. 1:08-CV-1451-LJM-DKL, 2012 WL 13026886, at *2 (S.D. Ind. Apr. 17, 2012) ("To order a stay of proceedings, it must be clear that the interests of justice require it, that adjudication of the claim would be a waste of judicial effort and that the plaintiff will not be substantially harmed by the delay.") (quoting *Hess v. Gray*, 85 F.R.D. 15, 27 (N.D. Ill. 1979)).

Here, the SEC has an interest in quickly resolving this case to further public interest in protecting investors. Forte has delayed resolution of this case for more than one year. His request for a stay is merely another delay tactic aimed at preventing the Court from taking the final step in entering judgment against him. No benefit comes from entering a stay—there are no overlapping issues that could be simplified by resolution of the private litigation and no burdensome litigation to avoid given the present case is already in its final stages. Additionally, the Court has already entered judgment against the named defendants in this case. (Dkts. 113, 114). Therefore, the Court denies Forte's request for a stay.

### III. Motion for Entry of Default Judgment

"There are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004); *see* Fed. R. Civ. P. 55. The Court ordered an entry of default against Relief Defendant Forte on July 13, 2017 for failure to respond to the Complaint (Dkt. 53) and, on August 14, 2017, denied Forte's motion to set aside that entry of default. (Dkt. 79). Based on the entry of default, liability has been established. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012); *In re Catt*, 368 F.3d at 793. All that is left is to set the amount of the default judgment. *See* Fed. R. Civ. P. 55(b). In this second step, "the well-pled allegations of the complaint relating to liability are taken as true, but those relating to the amount of damages suffered ordinarily are not." *Wehrs*, 688 F.3d at 892. The SEC still must establish it is entitled to the relief he seeks. *In re Catt*, 368 F.3d at 793. Here, the SEC seeks a default judgment in the amount of $1,044,270: $1,013,637 in disgorgement of ill-gotten gains Forte received from Glick during the course of the scheme and $30,633 in prejudgment interest. (Dkt. 68 at ¶ 30). For the reasons below, the Court grants this request and orders Forte to pay disgorgement and prejudgment interest totaling $1,044,270.

#### A. Disgorgement of Ill-Gotten Gains

Disgorgement is an equitable remedy designed both to deprive a wrongdoer of unjust enrichment and to deter others from violating the securities laws. *See, e.g., SEC v. Black*, No. 04 C 7377, 2009 WL 1181480, at *2 (N.D. Ill. Apr. 30, 2009); *SEC v. Michel*, 521 F. Supp. 2d 795, 830 (N.D. Ill. 2007) (citing *SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989)). District courts have broad discretion in determining whether to award disgorgement and, if awarded, in setting the amount. *See, e.g., Black*, 2009 WL 1181480, at *2; *Michel*, 521 F. Supp. 2d at 830 (citing *SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1474–75 (2nd Cir. 1996)). If

ordered, the amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation." *See, e.g., Michel*, 521 F. Supp. 2d at 830–31 (quoting *First City Financial*, 890 F.2d at 1231); *see also, e.g., Black*, 2009 WL 1181480, at *3. The SEC bears the burden of showing the amount is a "reasonable approximation" of the profits; if satisfied, the burden then shifts to defendants to demonstrate it is not. *See, e.g., id.*

Forte argues that requiring him to pay disgorgement would be improper because the SEC cannot establish that he violated the securities laws or committed any other wrongdoing, relying on *SEC v. Collins*, No. 01 C 3085, 2003 WL 21196236 (N.D. Ill. May 21, 2003). In *Collins*, the district court refused to order two of the named defendants to disgorge funds identified by the SEC because the SEC failed to show those defendants violated the securities laws or otherwise engaged in wrongdoing and, therefore, that the funds obtained by those defendants were ill-gotten gains. *Id.* at *5–7. But *Collins* is easily distinguished from the present case. Forte is not a named defendant and there is no dispute the funds he obtained from Glick were ill-gotten gains of Glick's fraud.

Moreover, it matters not whether Forte, as relief defendant, was personally involved in the fraud. "A court can obtain equitable relief from a non-party against whom no wrongdoing is alleged if it is established that the non-party possesses illegally obtained profits but has no legitimate claim to them." *SEC v. Cherif*, 933 F.2d 403, 414 n.11 (7th Cir. 1991); *see also SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998) ("Federal courts may order equitable relief against a person who is not accused of wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds."). Therefore, the SEC need not show that Forte illegally obtained the funds, only that Glick, the actual named defendant in this case, did so and that Forte has no legitimate claim to those funds. *See also, e.g.*,

*F.T.C. v. Cleverlink Trading Ltd.*, 519 F. Supp. 2d 784, 793 (N.D. Ill. 2007) (finding it immaterial to claim for disgorgement that relief defendants could not be held liable for named defendant's violations) (citing *Cherif*, 933 F.2d at 414, n.11); *SEC v. Egan*, 856 F. Supp. 401, 402 (N.D. Ill. 1993) ("To be sure, Relief Defendants may not have been directly culpable in the securities violations, but what the SEC seeks to have them disgorge are the *benefits* that they derived from the violations by the culpable defendants.") (emphasis in original). As explained above, Forte's liability as relief defendant for the funds, including that the funds constitute ill-gotten gains and that Forte has no legitimate claim to them, has already been established through the entry of default.

The SEC seeks $1,013,637 in disgorgement, based on the Declaration of John Kustusch, SEC Staff Attorney who has participated in the investigation of Glick and his companies and in the subsequent litigation. (Dkt 68-1 at ¶ 2). The Kustusch Declaration provides a schedule of all payments made by Glick and his companies to or for the benefit of Forte. (Dkt. 68-1 at Ex. 1). In all, the schedule reports seventeen payments made between December 9, 2014 to October 7, 2016, ranging in amount from $2,500 to $400,000 for a total of $1,013,637. (*Id.*). The schedule identifies for each payment both the payor—either Daniel Glick, FMS, or the Evelyn M. Warden Revocable Trust account, a trust account belonging to an elderly investor for which Glick served as co-trustee—and the recipient—either Edward H. Forte or a third party that received funds on Forte's behalf, including Velocity Partners, POL Trailer Corp., Lynette Hanson-Graville, Rimfor Investments, and Precise Construction. (*Id.*; Dkt. 68 at ¶22; Dkt. 8-1 at 3, 12, 16).

The total amount sought in disgorgement has been consistent since the outset of this case with one minor exception. The SEC originally sought an additional $300 (*see* Dkt. 8-1 at 144) but Glick disputed whether this $300, paid to Capital One, had in fact been made for Forte's benefit.

(*See* Dkt. 68-1 at ¶ 5). Glick did not dispute or raise any issue regarding any of the other seventeen payments, including whether any made to a third party were made for Forte's benefit. The SEC made the minor $300 reduction to appease Glick; otherwise, no other changes to this schedule have been made since the Complaint was filed. (*Id.*) Forte's own admissions also support this accuracy of the schedule. In an investigative interview with the SEC, Forte confirmed under oath that the seventeen payments listed in the schedule provided in the Kustusch Declaration represented payments made to him by Glick and that he received in total approximately $1,000,000 from Glick. (Dkt. 102-2 at 51:16–21; 123:11–23).

Forte seeks discovery and an evidentiary hearing on what he claims are "material" factual issues precluding entry of judgment—namely, whether he violated the securities laws, whether he benefited from payments to third parties identified in the Kustusch Declaration, and whether he repaid Glick any of funds received. (Dkt. 117 at 13–14). As an initial matter, Forte erroneously cites to the summary judgment standard in support of this argument. (*See id.* at 14 ("Here, the SEC has failed to show that 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'") (citing Fed. R. Civ. P. 56(c)). That standard does not apply here. In the context of a default judgment, a hearing on damages is required only where the amount claimed is not "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983)).

Here, the SEC has presented a detailed affidavit itemizing each payment of illegally obtained funds made to Forte or for his benefit. Forte argues this affidavit is insufficient because

Kustusch makes only conclusory statements that Forte benefited from the payments to third parties identified in the Declaration and has no personal knowledge to support those assertions. But Forte himself admitted that he, and not anyone else, received the seventeen payments identified on Kustusch's schedule from Glick. Furthermore, Glick only questioned one of the payments initially identified by the SEC, which has since been removed from the schedule. The Court is satisfied the SEC has met its burden in showing a reasonable approximation of the ill-gotten gains to be disgorged through the documentary evidence and affidavits submitted. Therefore, no hearing on the disgorgement amount is required. Because the disgorgement amount is the only issue currently before the Court, no other grounds for an evidentiary hearing exist. In particular, as discussed already, whether Forte violated the securities laws is irrelevant to his liability as relief defendant and regardless his liability has already been established.

Finally, Forte argues that to the extent the SEC seeks a personal money judgment against him for a violation of the securities law, this Court lacks subject matter jurisdiction to enter such order. (Dkt. 115 at 11–12). The SEC seeks no personal money judgment and the Court will not award one, so Forte's argument is moot. The SEC seeks only a disgorgement order and Forte concedes that this Court has jurisdiction to enter such order against him. *See id.* at 12 ("The court only has jurisdiction to order Forte to turn over funds that he may have in his possession that belongs to the alleged victims to the court as a disgorgement remedy."). Anyway, Forte is correct that this Court has jurisdiction to order that he pay disgorgement in this matter. The federal securities laws authorize the Court to hear civil enforcement actions brought by the SEC and to "grant[] any equitable relief that may be appropriate or necessary for the benefit of investors," 15 U.S.C.A. § 78u(d), including disgorgement and the related prejudgment interest. *See SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002) ("Disgorgement in SEC cases has been assumed to be

16

an equitable remedy... [and] prejudgment interest ... [is] an equitable remedy when ... the award to which it is attached is equitable."). The Court's jurisdiction over relief defendants derives from this grant of jurisdiction over the enforcement action against the named defendant. *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) ("Because of the non-interested status of the nominal," or relief, "defendant, there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction over the defendant is established."). Therefore, because the Court has jurisdiction over the SEC action against Glick, which Forte does not dispute, it need not establish jurisdiction separately over Forte to issue a disgorgement order against him.

B.     **Prejudgment Interest**

District courts enjoy "'wide discretion' in awarding prejudgment interest" in order to "assure that defendants do not profit from their fraud." *See, e.g., SEC v. Zenergy Int'l Inc.*, No. 13-CV-5511, 2016 WL 5080423, at *4 (N.D. Ill. Sept. 20, 2016); *see also, e.g., SEC v. Kirch*, 263 F. Supp. 2d 1144, 1152 (N.D. Ill. 2003). Courts generally award prejudgment interest on the disgorgement amount based on the IRS underpayment rate. *See, e.g., SEC v. Berrettini*, 218 F. Supp. 3d 754, 762 (N.D. Ill. 2016) ("[T]he amount on which a violator must pay prejudgment interest usually tracks the amount that the party is ordered to disgorge.") (quoting *SEC v. Contorinis*, 743 F.3d 296, 308 (2d Cir. 2014)); *SEC v. Reisinger*, No. 1:11-CV-08567, 2017 WL 6509403, at *2 (N.D. Ill. Oct. 4, 2017) (determining prejudgment interest by using the underpayment rate established quarterly by the Internal Revenue Service). The SEC seeks prejudgment interest totaling $30,633, calculated on the $1,013,637 disgorgement award at the IRS underpayment rate for the time period of October 7, 2016 through December 9, 2014. (Dkt. 68-1 at ¶¶ 7–14). This calculation is conservative in that it calculates prejudgment interest for a period of only approximately ten months from October 6, 2016—the date of the last payment made

to Forte—through August 1, 2017 and, therefore, excludes the 23-month period between December 2014 and October 2016 in which Forte received the more than $1,000,000 in funds from Glick. Forte does not dispute this calculation or that the Court should award prejudgment interest.

## **CONCLUSION**

For the reasons stated above, the Court denies Forte's motion for reconsideration and motion for a stay made in his Response to the SEC's Motion for a Default Judgment. (Dkt. 117). The Court grants the SEC's Motion for a Default Judgment against Relief Defendant Edward H. Forte (Dkt. 68) and orders entry of a default judgment against Forte totaling $1,044,270: $1,013,637 in disgorgement of ill-gotten gains Forte received from Glick during the course of the scheme and $30,633 in prejudgment interest.

Hon. Virginia M. Kendall
United States District Judge

Date: January 2, 2019